FILED
United States Court of Appeals
Tenth Circuit

April 24, 2009

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

> Plaintiff-Appellee,

v.

MARCOS USCANGA-MORA,

> Defendant-Appellant.

No. 07-4248

---

**Appeal from the United States District Court
for the District of Utah
(D.C. No. 1:06-CR-00118-DS-4)**

---

Howard A. Pincus, Assistant Federal Public Defender (Raymond P. Moore, Federal Public Defender, with him on the briefs), Denver, Colorado, for Defendant-Appellant.

Diana Hagen, Assistant United States Attorney (Brett L. Tolman, United States Attorney, with her on the brief), Salt Lake City, Utah, for Plaintiff-Appellee.

---

Before **HENRY,** Chief Judge, **McWILLIAMS,** Senior Circuit Judge, and **GORSUCH**, Circuit Judge.

---

**GORSUCH**, Circuit Judge.

---

Marcos Uscanga-Mora appeals the district court's imposition of a two-level

sentence enhancement under U.S. Sentencing Guideline § 3B1.1(c). He argues

that the district court failed to explain adequately its reasons for imposing the enhancement. Alternatively, he submits there is simply insufficient evidence supporting the enhancement. Because Mr. Uscanga-Mora never objected in the district court to the adequacy of the court's explanation, our review of his first argument is limited to plain error. Discerning none, and faced with ample evidence to support the district court's sentence, we affirm.

I

After Mr. Uscanga-Mora pled guilty to possession with intent to distribute at least 500 grams of methamphetamine, the probation office prepared a presentence report. The government objected to the report, and sought an additional two-level enhancement of the applicable offense level pursuant to U.S.S.G. § 3B1.1(c). Section 3B1.1(c) provides for a two level enhancement "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity" involving fewer than five participants. *Id.* In support of its request, the government asserted that certain "[t]ape recordings made of conversations between defendant and others," in particular Mr. Uscanga-Mora's wife, Vere Uscanga-Mora, and cousin, Jesus Uscanga-Cano, established that Mr. Uscanga-Mora qualified for the enhancement. Vol. I, Doc. 77 at 1-2. By way of example, the government cited the following conversations:

> . . . [A]t 1:42 p.m. on June 25, 2006, Marcos Uscanga[-Mora]
> spoke with his wife Vere and instructed her to give money to an
> associate of Gabino Barajas-Torres's. Marcos stated that the money

was hidden behind the television set. Vere asked if she was to give the man all of the money and Marcos said yes. He then instructed Vere to count the money again.

During another call on June 25, 2006, at 4:50 p.m., Marcos Uscanga[-Mora] called his cousin Jesus and told Jesus that "Brad" didn't have the money. Jesus told Marcos that Brad said he did have the money and Marcos replied that if Brad didn't have the money, they would not be doing business. Jesus told Marcos that when he saw Brad he would tell him not to play games. Jesus then acknowledged that the business was not his, it was Marcos's and he would tell Brad. Numerous other calls were intercepted between Marcos Uscanga[-Mora] and his cousin Jesus. In those calls Marcos Uscanga[-Mora] is often heard giving Jesus instructions regarding deliveries of narcotics or other related business matters.

*Id.* at 2.

In the end, the probation officer concurred with the government's view and modified the presentence report to reflect a two-level increase under U.S.S.G. § 3B1.1(c). The ultimate resulting offense level was 37; when combined with Mr. Uscanga-Mora's criminal history category of I, the Guidelines yielded a recommended sentencing range of 210 to 262 months.

At the sentencing hearing before the district court, counsel for Mr. Uscanga-Mora objected to the § 3B1.1(c) enhancement. Counsel argued that the content of the phone conversations cited by the government did not prove that Mr. Uscanga-Mora was an organizer or leader of criminal activity. Vol. IV, Doc. 141 at 4. To this, the court replied that "from my reading of it, it seems to me that he was more the individual that was directing the affairs." *Id.* Counsel persisted, contending that Mr. Uscanga-Mora and his cousin, Mr. Uscanga-Cano, had an

- 3 -

"equal role and participation" in the drug scheme, and that "[t]he person supplying the drugs and giving them the drugs, this gentleman, Gabino Barajas-Torres, [was] the organizer of this group and not my client." *Id.* at 5. The government then responded that:

> Mr. Gabino Barajas-Torres was a supplier to Marcos Uscanga[-Mora]. Marcos Uscanga[-Mora], the wiretap clearly reveals, directed his cousin, Jesus, and I do have the case agent here today, and I am familiar with many of the tape recordings, but the case agents indicated that for all intents and purposes Jesus Uscanga-Cano was a user of drugs and was quite unreliable. A number of tape recordings that have been intercepted have Marcos Uscanga[-Mora] talking about his unreliability, but he did direct Jesus, and he also directed his wife. Under the guidelines, Your Honor, that does give him the two-level enhancement. We are not saying that he is a kingpin, but he certainly directed others in this operation, and he was in charge of this operation.

*Id.* at 5-6.

The district court expressed its agreement with this analysis, and then asked the defense counsel if he had any "more information on the record." *Id.* at 6. Defense counsel answered that he had received the tapes, and that "[f]rom the report before the Court and the presentence recommendation, you know, that would be the evidence in front of Your Honor as to what their respective levels were." *Id.* He also added, as argument against imposition of the enhancement, that "[y]ou can ask someone else to do something on your behalf . . . [and] that does not necessarily indicate that he is an organizer or a director. . . . There are various roles between equals, Your Honor, and I would submit that that is what

we're talking about here now." *Id.* at 6-7. At this point, the government stepped in to add "one other fact," namely that Gabino Barajas-Torres "did not talk to Jesus Uscanga-Cano, he talked to Marcos Uscanga[-Mora]." *Id.* at 7.

At the conclusion of this discussion, the district court found the two-level enhancement warranted by the evidence, stating that

> I think that is sufficient, counsel, to determine that the two-level enhancement for his role in the offense is sufficient to determine – let me turn to that paragraph. I think pursuant to U.S.S.G. Section 3B1.1(c) that there is sufficient evidence in the record to establish that the defendant was either an organizer, leader, manager or supervisor in this activity. Accordingly, the Court finds that the two-level enhancement for that role is appropriate.

*Id.* The court proceeded to calculate Mr. Uscanga-Mora's total offense level to be 37, and asked counsel if there was "[a]nything else." *Id.* at 7-8. To this both counsel replied "No." *Id.* at 8. Later in the hearing, the court again asked if there was "[a]ny legal reason why sentence should not go forward at this time." *Id.* at 11. Again, counsel said no. *Id.* The court then sentenced Mr. Uscanga-Mora to 210 months, at the bottom of the recommended Guidelines range. *Id.* at 12.

II

On appeal, Mr. Uscanga-Mora argues primarily that the district court did not adequately explain its reasons for imposing the § 3B1.1(c) sentencing enhancement. Alternatively, he submits, insufficient evidence exists in the record to support the enhancement. We address each contention in turn.

A

Our review of Mr. Uscanga-Mora's first argument is shaped by the posture of his appeal. Before the district court, counsel for Mr. Uscanga-Mora vigorously disputed the government's substantive claim that sufficient evidence existed to support an enhancement under § 3B1.1(c). But at no point did he raise any concern with the procedural adequacy of the district court's explanation of its decision to impose that enhancement. To the contrary, after the district court finished explaining its analysis of the § 3B1.1(c) issue, it asked counsel whether they had "anything else" to add, or whether there was "[a]ny legal reason why sentence should not go forward." Vol. IV, Doc. 141 at 7-8, 11. To both questions, defense counsel said no. *Id.* at 8, 11. Because Mr. Uscanga-Mora did not alert the district court that he considered its statement of reasons for issuing the enhancement inadequate, his claim for relief on this procedural ground has been forfeited. Reviewing his claim for plain error, we discern none.

1

That our review should be for plain error is compelled both by our precedent and sound reason. Consider first our precedent. The requirement that the district court articulate its reasons for imposing a § 3B1.1 enhancement stems at least in part, we have said, from Fed. R. Crim. P. 32(i)(3)(B), a rule requiring the district court "for any disputed portion of the presentence report or other controverted matter [t]o rule on the dispute." *United States v. Pena-Hermosillo*,

522 F.3d 1108, 1112-13 (2008).  It also surely stems in part from 18 U.S.C. §

3553(c)'s requirement that a sentence be accompanied by a statement of reasons.

*See Rita v. United States*, 127 S. Ct. 2456, 2468 (2007) (describing value of §

3553(c)'s statement of reasons requirement).  But whether the duty arises from

Rule 32, § 3553(c), or some other source, we have consistently held plain error

review obtains when counsel fails to render a contemporaneous objection to the

procedural adequacy of a district court's statement of reasons at sentencing.  *See,*

*e.g., United States v. Cook*, 550 F.3d 1292, 1298 (10th Cir. 2008) (Rule 32);

*United States v. Mendoza*, 543 F.3d 1186, 1191 (10th Cir. 2008) (§ 3553(c));

*United States v. Romero*, 491 F.3d 1173, 1177 (10th Cir. 2007) (same).

Moreover, at least a pair of our sister circuits and two of our unpublished

opinions have already applied plain error review in the  § 3B1.1 context.  *See,*

*e.g.*, *United States v. Molina*, 356 F.3d 269, 277 (2d Cir. 2004); *United States v.*

*Rhynes*, 196 F.3d 207, 241 (4th Cir. 1999), *vacated in part on other grounds by*

218 F.3d 310 (4th Cir. 2000) (en banc); *United States v. Begaye*, 2006 WL

122462, at *1 (10th Cir. 2006); *United States v. Gordon*, 1998 WL 704684, at *1

(10th Cir. 1998).

Applying plain error here also makes sense.  The Supreme Court has

recently cautioned us that "any unwarranted extension of the authority granted by

Rule 52(b)," which provides for plain error review in cases of unpreserved

challenges, "would disturb the careful balance it strikes between judicial

efficiency and the redress of injustice; and . . . the creation of an unjustified exception to the Rule would be even less appropriate." *Puckett v. United States*, — S. Ct. —, 2009 WL 763354, at \*5 (2009) (citations, internal quotation marks, and brackets omitted). Mr. Uscanga-Mora offers us no "conceivable reason . . . for disregarding [the Rule's] evident application" in this context, *id.*, and neither are we able to see one on our own. To the contrary, the benefits the judicial system derives from a contemporaneous objection requirement in the sentencing context outweigh the modest burden such a requirement imposes on counsel. *Romero*, 491 F.3d at 1177. A district court alerted to the potential inadequacies of its statement of reasons at sentencing is often in a position to remedy them easily and quickly. Sometimes as little as an additional sentence or paragraph of explanation, or a response to a question, will suffice to dispel any need for an appeal. Meanwhile, without a contemporaneous objection requirement, many cases will needlessly ping-pong back and forth between the district court and court of appeals, with the parties expending substantial resources fighting over a problem that could have been readily identified and cured up front. *See Puckett*, — S. Ct. —, 2009 WL 763354, at \*4 (Plain error review "serves to induce the timely raising of claims and objections, which gives the district court the opportunity to consider and resolve them. . . . In the case of an actual or invited procedural error, the district court can often correct or avoid the mistake. . . ."); *United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004) (stating that

- 8 -

plain-error review "encourage[s] timely objections and reduce[s] wasteful reversals by demanding strenuous exertion to get relief for unpreserved error"); *United States v. Lopez-Flores*, 444 F.3d 1218, 1221 (10th Cir. 2006) ("A timely objection to the method [used to calculate the sentence] can alert the district court and opposing counsel, so that a potential error can be corrected, obviating any need for an appeal.").

Of course, plain error review should not be like a hidden mantrap, encountered without warning yet often deadly. Precisely for this reason, the federal rules provide for plain error review only when counsel has been given, but has not taken advantage of, an *opportunity* to voice his or her objection; where no such opportunity was afforded in the district court, our normal standards of review pertain. *See* Fed.R.Crim.P. 51(b). Likewise, counsel will not be stuck with plain error review for having failed to voice an objection when doing so would have been futile. *See United States v. Algarate-Valencia*, 550 F.3d 1238, 1243 (10th Cir. 2008). Neither such circumstance, however, exists here. In this case, the district court judge paused at the end of his discussion of the sentencing enhancement and gave both parties the opportunity to raise any additional concerns. The judge then proceeded to ask, specifically, whether either was aware of any legal reason why sentencing ought not proceed. Under these circumstances, the parties indisputably had the opportunity to raise any as-yet unvoiced objection to the court's statement of reasons for granting the

enhancement.* We likewise have no indication that an objection would have been futile; the district court here, unlike the court in *Algarate-Valencia*, did nothing to indicate that it was no longer open to discussion about the need to clarify the reasons supporting its sentencing decision.

One might ask whether Mr. Uscanga-Mora's entreaties to the district court that there was insufficient evidence to support a § 3B1.1(c) enhancement were sufficient to preserve a procedural challenge to the adequacy of the district court's explanation for its decision. But Mr. Uscanga-Mora did not make this argument to us, and there is good reason for him not having done so. In *United States v. Mendoza*, we faced and rejected exactly such an argument from the government. At sentencing, the government disputed vigorously the defendant's sentence on substantive grounds. 543 F.3d at 1191. On appeal, the government challenged the procedural adequacy of the district court's statement of reasons under 18 U.S.C. § 3553, and, in an effort to avoid plain error review, argued that its various substantive objections "encompass[ed] the required procedural

---

* One of our sister circuits has gone so far as to exercise its supervisory authority to require district courts to invite new objections before adjourning any sentencing hearing, albeit over a concurrence arguing that such a rule is unnecessary given Rule 51(b)'s assurance that plain error will not apply absent an opportunity to raise an objection. *United States v. Bostic*, 371 F.3d 865, 871, 872 (6th Cir. 2004); *id.* at 878 (Ryan, J., concurring). *See also United States v. Thomas*, 498 F.3d 336, 340 (6th Cir. 2007) (extending *Bostic* to require district court to state even more clearly that it was inviting objections not previously raised). We have no occasion today to weigh in on this debate: whether or not an invitation of objections by the district judge is required is immaterial because it was afforded in this case.

objection." *Id.* We rejected this argument, holding instead that "[a] party must specifically object to the district court's procedure in order to preserve that issue for review." *Id.* We see no possible basis for reaching a different result in this case. Mr. Uscanga-Mora surely alerted the district court of his substantive objection that there was insufficient evidence to support his sentencing enhancement, but just as surely his objection did not specifically alert the district court that its statement of reasons was procedurally inadequate.

2

Our plain error standard is satisfied "when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Cook*, 550 F.3d at 1298. At the very least, Mr. Uscanga-Mora's appeal cannot satisfy the third of these requirements.

To show that an error affected his substantial rights, Mr. Uscanga-Mora must establish "a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *Id.* This he cannot do. Whatever the perceived inadequacy of the district court's recitation of its reasons, the district court's sentencing decision was amply supported by evidence the government proffered at sentencing – evidence that was neither contested nor countered by the defense. The defendant thus received a sentence merited by the evidence, and we cannot say – as we would have to in order to find plain error –

that, but for the claimed error, the defendant's sentence would have been any different. *See id.* at 1298 (defendant could not meet the third prong of plain error in his challenge to the adequacy of findings under Rule 32(i)(3)(B) given the presence of sufficient evidence to support the enhancement); *United States v. Gore*, 298 F.3d 322, 325 (5th Cir. 2002) ("If the defendant does not object and there is evidence to sustain the enhancement, the error [under § 3553's open court provision] is not reversible under the plain error standard."); *United States v. Orlandez-Gamboa*, 2006 WL 1668055, at *1 n.1 (2d Cir. 2006) (no plain error in failure to make adequate findings in support of enhancement under § 3B1.1 because "there is evidence to sustain the enhancement"); *see also United States v. Trujillo-Terrazas*, 405 F.3d 814, 819 (10th Cir. 2005) (stating defendant can meet his burden on prong three "by demonstrating a reasonable probability that had the district court applied the [proper] sentencing framework, he would have received a lesser sentence").

Before us, the evidence demonstrates that Mr. Uscanga-Mora "led, managed, or supervised" at least his cousin, Mr. Uscanga-Cano, in criminal activity, and, by dint of this, was eligible for a § 3B1.1(c) enhancement. The government offered, and the defendant did not contest, evidence of numerous conversations between the two in which Mr. Uscanga-Mora gave Mr. Uscanga-Cano orders about their narcotics business. Vol. I, Doc. 77 at 2. By way of example, the government explained that Mr. Uscanga-Mora instructed his cousin

not to do business with a particular customer who lacked sufficient money to pay for drugs. *Id.* In this same conversation, as well, Mr. Uscanga-Cano acknowledged that the drug selling business was Mr. Uscanga-Mora's, not his own. *Id.* The government also presented uncontested evidence that Gabino Barajas-Torres, the individual the defense conceded was an organizer and supplier of the drug ring, dealt directly with only Mr. Uscanga-Mora, not Mr. Uscanga-Cano. *Id.*

While Mr. Uscanga-Mora protests, and we agree, that this evidence hardly paints him as a drug kingpin, that is not required to support a § 3B1.1(c) enhancement. We have explained that "the sentencing court should remain conscious of the fact that the gravamen of this enhancement is control, organization, and responsibility for the actions of other individuals because § 3B1.1[] is an enhancement for organizers or leaders, not for important or essential figures." *United States v. Sallis*, 533 F.3d 1218, 1223 (10th Cir. 2008). Toward this end, we have identified several factors that might point to a defendant's control over others, including that "other sellers worked for him, were recruited by him, or had their activities controlled by him; he paid others for their efforts on behalf of the conspiracy; he restricted the people to whom other coconspirators could sell their drugs; and he controlled the manner of sales, set prices, or claimed the right to a larger share of proceeds." *Id.* (internal quotation marks omitted). *See also* § 3B1.1 cmt. n.4. These factors are present in this case:

- 13 -

At the least, Mr. Uscanga-Mora controlled the activities of his cousin and restricted the people to whom his cousin could sell drugs, and we have previously, and regularly, held evidence along these lines sufficient to place a defendant within the ambit of § 3B1.1(c). *See, e.g.*, *United States v. Moore*, 919 F.2d 1471, 1477 (10th Cir. 1990) (finding enhancement warranted where defendant exercised control over the doorman to the house from which he sold drugs); *United States v. Backas*, 901 F.2d 1528, 1529-30 (10th Cir. 1990) (same).

B

We turn at last to Mr. Uscanga-Mora's sufficiency of the evidence challenge, but need not linger long here. When evaluating sentence enhancements under the Sentencing Guidelines, we review the district court's factual findings for clear error and questions of law *de novo*. *United States v. Mozee*, 405 F.3d 1082, 1088 (10th Cir. 2005). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *United States v. Spears*, 197 F.3d 465, 469 (10th Cir. 1999). For the reasons we have already fully detailed above with respect to Mr. Uscanga-Mora's first challenge, we cannot say that the district court's determination that he was an "organizer, leader, manager, or supervisor"

was based on insufficient evidence.  The record evidence supports, even if it does not compel, the district court's determination.  No more is required by law.

*Affirmed.*